## BACON v. TAYLOR.

THIS was an action of ejectment, to recover the possession of certain lands described in the declaration. The defendant pleaded — That the only title and claim of the plaintiff, was founded on a certain deed from one Nathaniel Cornwell, of Middletown; in and by which deed, the said Cornwell, for, and in consideration of the love, good will, and affection, which he bore to his niece, Abigail Taylor, wife of Joseph Taylor (the defendant) did give and grant to Jeremiah Bacon (the plaintiff) and to his heirs and assigns, the lands demanded, to hold in trust, for the said Abigail Taylor, during the term of her natural life; and after her decease, in trust, for the children born, or to be born of the said Abigail, and to their heirs and assigns, forever: And that the said Abigail is deceased, leaving children of her body, by the defendant, viz. Jeremiah, John, Joseph, and Abigail: That said children are all minors; and that the defendant, their father, is the legal guardian to said minors, and in their behalf, and as guardian, is in possession of the land demanded, and holds the same in their right.

To which there was a demurrer, and joinder in demurrer. Two questions were made in this case:—

1. What estate is vested in the children of said Abigail?

2. Whether the defendant, as guardian to said children, has the right of possession during their minority? And,

By the COURT. As to the first, we are clearly of opinion — that, notwithstanding the words of the deed are expressive of a grant to Bacon, his heirs and assigns, yet, as it is in

trust for Abigail Taylor, her children, their heirs and assigns, forever, the whole estate is vested in the children of Abigail, in fee.

The original of uses, was from the civil law, which allows a use different from the thing itself; and was introduced and supported by the clergy, to avoid the Statute of Mortmain. It had no legal foundation, but in fact was founded in fear and fraud, and was supported by the judges of chancery, who were at that day generally clergymen; and were very ready to adopt any method to avoid a statute which deprived them of such emoluments and influence.    Bac. Abrid. tit. Uses.— It was considered the *cestui que use*, had neither *jus in re*, nor *ad rem;* and if the trustee broke his trust, there was no legal remedy against him, but an application must be made to chancery, and then not allowable against his heir.    Neither the trustee, nor him to whose use, could forfeit; nor could the estate be extended against one or the other; and was therefore esteemed to be against the policy of law.— Several statutes were found necessary to remedy the many inconveniences which attended such conveyances — See Stat. Rich. III. cap. 1.    And finally, the stat. 17 Hen, VIII, was passed, whereby the whole estate was vested in the *cestui que use*, which settled the law respecting that kind of conveyances.— And this was the law and idea of our progenitors, when they emigrated to this country; — and for our courts to establish the doctrine of uses here, which would necessarily require a number of statutes to remedy the inconveniences resulting from such practice, can be neither wise or prudent.

The children of Abigail, having an absolute estate in the lands in question, the possession follows the use; and the plaintiff being only a mere nominal person in the deed, and

no consideration arising from him, he is considered as having no legal estate in the premises, by which he can recover the possession from the defendant, who, as guardian to the children, in their right, may lawfully hold the possession.

SHERMAN and ELLSWORTH, JJ., dissenting. It appears manifestly to us, to have been the intent of the grantor of the lands in question, to vest the legal title in the plaintiff, subject to a trust, for the purposes mentioned in the deed; which intent should take effect, unless it be against law.

By the common law of England, feoffments in trust clearly vested the legal title in the feoffee, and an equitable right or lien only in the *cestui que trust*, until the statute of 27 Hen. VIII. called the Statute of Uses; which statute was made to remedy particular inconveniences that cannot happen in this state; of which the principal one was, that the Statute of Mortmain was liable to be defeated; — another, that the lord lost his wardship, reliefs, marriages, and escheats; a third was, that as estates passed by way of use, from one to another, by bare words, without any solemn ceremony, or record of the transactions, purchasers, and others, that had right, were imposed on.— Other inconveniences were also enumerated in the preamble, which are since obviated by a more enlightened course of practice in the Courts of Chancery, who, for near a century, have uniformly decided — that the trust descends, may be aliened, is liable to debts, to forfeiture, and even to the curtesy of the husband; — by which means, as Judge Blackstone observes (2 Com. 337.) " Trusts are made to answer in general, all the beneficial ends of uses, without their inconveniences or frauds." — Inoperative here, therefore, are the reasons

for the Statute of Uses; a statute, indeed, which never had an effect in England, to prevent the creation of trust estates, but only to substitute the term trust for use, and vary a little the form of words by which the trust is raised, so as to express a use upon a use, or a use upon a term of any length; or that the feoffee is to pay over the profits.— So expressed, the feoffee still holds the legal estate, and the *cestui que trust* hath his remedy only in chancery. (See Bac. Abrid. tit. Uses — and 2 Black. Com. 327-337.) — Thus stands the common law of England, upon the doctrine of trusts; which we do not think to be unreasonable, or repugnant to any principle or decision of our own.

As to the right of a donor to create a trust — Why may he not, who is admitted a right to give his estate absolutely to whom he pleases, give it, subject to a trust, or an equitable lien, for the benefit of a person or persons whom he wishes, and it may be his duty to provide for; but not to intrust with the disposal or management of the whole estate?   And where is the danger of fraud or imposition, when all the interest that any one hath in the estate appears of record, as must be the case here; and is subject in law or equity to all reasonable duties and dispositions?   If, under any circumstances, it becomes reasonable, that the feoffee should transfer the possession, or even the fee, to the *cestui que trust*, and he refuses to do it, a Court of Chancery may compel him, taking care, at the same time, that equity be done to him also; and that he be reimbursed his charges incurred for the benefit of the trust, as in repairs, taxes, or otherwise.

It is therefore, our opinion, that the plaintiff in this case, hath the legal estate in him, and right at law to re-

Bacon v. Taylor.

cover and hold the possession, until a Court of Chancery, upon the whole circumstances of the case, shall otherwise order and decree.